**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

FILED
U.S. DIST. COURT

SEP 25 2015

CLERK _B. West_
SO. DIST. OF GA

AMERIS BANK, as assignee of )
the Federal Deposit Insurance )
Corporation, receiver of )
Darby Bank and Trust Co., )
                       )
     Plaintiff, )
                       )
v. )      CASE NO. CV413-241
                       )
LEXINGTON INSURANCE COMPANY, )
                       )
     Defendant and Third- )
     Party Plaintiff, )
                       )
v. )
                       )
COASTAL BIOFUELS, INC., )
                       )
     Third-Party Defendant, )
                       )

## O R D E R

Before the Court are Plaintiff Ameris Bank's Motion for Partial Summary Judgment (Doc. 42) and Defendant Lexington Insurance Company's Motion for Summary Judgment (Doc. 45). For the following reasons, both motions are **GRANTED IN PART** and **DENIED IN PART**: Plaintiff is entitled to summary judgment only with respect to its claim for breach of contract. Defendant is entitled to summary judgment on Plaintiff's claims for bad faith adjustment and conversion, which are both hereby **DISMISSED**.

**BACKGROUND**

In this case, Plaintiff Ameris Bank alleges that Defendant Lexington Insurance Company ("Lexington") failed to properly pay the proceeds of an insurance policy issued by Defendant Lexington to Third-party Defendant Coastal Biofuels ("Coastal"). In October 2009, Defendant Coastal entered into a leasing agreement[1] with Darby Bank for pieces of heavy equipment. (Doc. 45, Attach. 1 at 3; Doc. 16, Ex. A at 1, 5, 9.) As part of the agreement, Darby Bank required Defendant Coastal to insure the equipment and identify Darby Bank as a mortgagee. (Doc. 45, Attach. 1 at 3.) To meet this requirement, Defendant Coastal purchased from Defendant Lexington policy number 43924991, which listed Defendant Coastal as the named insured and Darby Bank as a mortgagee. (Id.; Doc. 16, Ex. B at 1.) Specifically, Item 6 of the policy's declarations page recognized the policy's mortgage clause and stated that "[l]oss, if any shall be payable to: Darby Bank, Attn: K Rossiter." (Id.) The policy's mortgage clause provided that "[l]oss or damage, if any, under this policy shall be

---

[1] While styled as a lease, the contract was more accurately a purchase agreement whereby Defendant Coastal would own the equipment after successful completion of the lease term. (Doc. 42 at 2 n.1) To this end, Darby Bank perfected a security interest in the equipment. (Id. at 2.)

payable to the mortgagee(s), as scheduled on this policy, as their interest(s) may appear." (Id. at 47.)

On October 13, 2009, a fire destroyed the equipment. (Doc. 45, Attach. 1 at 3.) In response, Defendant Coastal filed a claim on the policy. (Id.) Defendant Lexington engaged an independent contractor—Mr. Curtis Cramer—to adjust Defendant Coastal's claim. (Id.) According to Defendant Lexington, Mr. Cramer spoke with an individual at Darby Bank who informed him that "Darby did not possess any liens and all payments were current." (Id.) Based on this information, Defendant Lexington paid to Defendant Coastal policy proceeds in the amount of $1,145,245.58, of which $568,000.00 was for damage to the equipment. (Id.) Defendant Lexington took possession of the equipment, ultimately disposing of it due to the lack of any salvage value. (Id. at 4.)

At the time of the fire, Defendant Coastal owed Darby Bank $507,269.00 under the terms of the lease agreement. (Doc. 42 at 3.) While Defendant Coastal purchased replacement equipment with the policy proceeds (Doc. 45, Attach. 1 at 4), it failed to notify Darby Bank that the equipment had been destroyed (Doc. 42 at 3). In addition, Defendant Coastal continued to make the required payments under the terms of the lease agreement. (Id. at 6.)

3

However, Defendant Coastal ultimately defaulted on the agreement with $318,448.00 in remaining lease payments. (Id.)

In November 2010, the Georgia Department of Banking and Finance closed Darby Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. (Doc. 45, Attach. 1 at 4.) Plaintiff subsequently entered into a Purchase and Assumption Agreement with the FDIC and acquired Darby Bank's assets. (Id.) After reviewing the Darby Bank files, Plaintiff sent a February 4, 2013 letter to Defendant Lexington requesting information about the equipment and any related insurance proceeds. (Id. at 5.) Receiving no response, Plaintiff inquired on March 27, 2013 about any insurance proceeds distributed based on the 2009 fire and offered to submit proof of loss. (Id.) Plaintiff sent a third inquiry in May 2013, ultimately demanding payment in a July 17, 2013 letter. (Id.)

On September 30, 2013, Plaintiff filed suit against Defendant Lexington in the State Court of Chatham County. (Doc. 1, Ex. 1.) Defendant Lexington invoked this Court's diversity jurisdiction and removed this case pursuant to 18 U.S.C. § 1332. Plaintiff amended its complaint, alleging claims against Defendant Lexington for breach of contract based on Defendant Lexington's failure to pay under the

insurance policy, bad faith adjustment with respect to Plaintiff Lexington's mishandling the insurance proceeds, and conversion centered on Defendant Lexington's possession and disposal of the equipment. (Doc. 16.) Defendant Lexington filed a third-party complaint against Defendant Coastal for indemnification, alleging Defendant Coastal wrongfully converted the insurance proceeds. (Doc. 17.)

In its Motion for Summary Judgment, Plaintiff argues that Defendant Lexington clearly breached the mortgage clause of the insurance policy by failing to pay Darby Bank as a named mortgagee. (Doc. 42 at 9-11.) In this regard, Plaintiff contends that Defendant Lexington has either waived any defense to the breach of contract claim, or is estopped from denying coverage under D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942), and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. (Doc. 42 at 11-13.) In addition, Plaintiff maintains that Defendant Lexington's refusal to pay for Plaintiff's claim under the policy was in bad faith, entitling Plaintiff to additional damages and attorney's fees under O.C.G.A. § 33-4-6(a). (Doc. 42 at 13-19.)

In response, Defendant Lexington argues that it is entitled to summary judgment because Plaintiff's claim for

breach of contract is barred by the two-year suit limitation provision contained in the insurance policy. (Doc. 45, Attach. 1 at 7-13.) Defendant Lexington also contends that the insurance policy was not properly assigned to Plaintiff. (Id. at 13-14.) In addition, Defendant Lexington maintains that Plaintiff is estopped from seeking payment under the policy based on Darby Bank's purported representation that it had no liens on the equipment. (Id. at 14-18.) With respect to the claim for bad faith, Defendant Lexington asserts that Plaintiff failed to make a proper demand under O.C.G.A. § 33-4-6 and that Darby Bank did not assign Plaintiff any claim for bad faith. (Doc. 45, Attach. 1 at 18-22.) Finally, Defendant Lexington avers that Plaintiff's conversion claim fails because Plaintiff was not damaged by the disposal of the valueless equipment. (Id. at 22-23.)

**ANALYSIS**

I.   SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as

6

a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to

the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II.  BREACH OF CONTRACT

What is clear in this case is that the insurance policy named Darby Bank as a mortgagee and the mortgage clause required Defendant Lexington to pay Darby Bank the value of its interest in the equipment in the event of any loss. (Doc. 16, Ex. B at 1, 48.) The parties' dispute centers on whether Defendant Lexington has any valid defenses for its failure to properly pay Darby Bank. To

this end, Defendant Lexington raises three defenses it argues prohibit Plaintiff from seeking payment under the policy: a two-year suit limitations provision contained in the insurance policy (Doc. 59 at 4-7), equitable estoppel based on representations made by a Darby Bank representative (id. at 7-8), and lack of a valid assignment of the insurance policy from Darby Bank to Plaintiff (Doc. 45, Attach. 1 at 13-14). Plaintiff counters by contending that a six-year statute of limitations is applicable to this claim (Doc. 67 at 4-7), Defendant Lexington is barred from raising an estoppel defense (id. at 9-11), Defendant Lexington cannot establish the elements of estoppel (id. at 7-9), and assignment is not required for the transfer of the insurance policy (id. at 11).

A.    Limitations Period

Defendant Lexington argues that Plaintiff's claim for breach of contract is barred by the two-year suit limitations period contained in the insurance policy. (Doc. 59 at 4-7.) FIRREA contains a provision granting to the FDIC a six-year statute of limitations for breach of contract claims, stating that

> [n]otwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

> (i) in the case of any contract claim, the longer of—
>> (I) the 6-year period beginning on the date the claim accrues;
>> (II) the period applicable under State law.

12 U.S.C. § 1821(d)(14)(A)(i). While the Eleventh Circuit has yet to decide the issue, most federal courts interpreting this statute have determined that an assignee of the FDIC also enjoys the extended six-year statute of limitations. See, e.g., UMLIC VP LLC v. Matthias, 364 F.3d 125, 131-33 (3d Cir. 2004); FDIC v. Bledsoe, 989 F.2d 805, 810-12 (5th Cir. 1993); Mountain States Fin. Res. Corp. v. Agrawal, 777 F. Supp. 1550, 1552 (W.D. Okla. 1991). Contra Joslin v. Grossman, 107 F. Supp. 2d 150, 155-57 (D. Conn. 2000); LR1-A Ltd. P'ship v. Patterson, 1997 WL 1146319, at *2-3 (D.N.H.); Remington Invs., Inc. v. Kadenacy, 930 F. Supp. 446, 450-51 (C.D. Cal. 1996). In light of FIRREA's purpose to preserve assets of failed banking institutions, this Court is inclined to agree that the federal statute grants to assignees of the FDIC the protection of the six-year statute of limitations.

Moreover, those federal courts declining to permit an assignee to enjoy the six-year limitations period rely on the Supreme Court's decision in O'Melveny & Meyers v. FDIC, 512 U.S. 79 (1994), for the proposition that the applicable state law of assignments determines whether an assignee

10

receives the FDIC's extended limitations period. <u>First State Bank of Nw. Ark. v. McClelland Qualified Pers. Residential Tr.</u>, 2014 WL 6801803, at *6 (M.D. Ga.). In Georgia, "an assignee 'stands in the shoes' of the assignor." <u>S. Telecom, Inc. v. TW Telecom of Ga. L.P.</u>, 321 Ga. App. 110, 114, 741 S.E.2d 234, 237 (2013). The rights passed down to the assignee "are neither enhanced nor diminished by assignment." <u>Id.</u> Therefore, the outcome in this case is the same under either federal or state law—Plaintiff is entitled to rely on the six-year statute of limitations contained in § 1821(d) because that right flowed from the FDIC to Plaintiff. Accordingly, the suit limitations period does not operate to bar Plaintiff's claim for breach of contract.

B.    <u>Equitable Estoppel</u>

Defendant Lexington argues that Plaintiff is estopped from seeking payment under the insurance contract because an unnamed representative at Darby Bank informed the adjuster that Defendant Coastal's "payments were current and that there were no liens on the property." (Doc. 59 at 8.) The elements of federal common law equitable estoppel in the Eleventh Circuit are

> "(1) the party to be estopped misrepresented
> material facts; (2) the party to be estopped was
> aware of the true facts; (3) the party to be

11

estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation."

Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1326 (11th Cir. 2008) (quoting Nat. Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc., 929 F.2d 1558, 1572 (11th Cir. 1991)). However, this Court concludes that Defendant Lexington has failed to point to evidence in the record that satisfies these elements.

First, Defendant Lexington fails to identify evidence supporting the notion that Darby Bank misrepresented any material fact. Mr. Cramer states that Darby Bank advised him "that there were no liens [on the equipment] and payments were all current." (Doc. 59, Ex. 3 at 14:3-4.) While Mr. Cramer possibly interpreted this statement as meaning that Darby Bank lacked any interest in the equipment, this misunderstanding does not change the factual accuracy of Darby Bank's representations. As a result, Darby Bank did not misrepresent any material fact.

Second, Defendant Lexington should have known that Darby Bank retained an interest in the property. As previously noted, the insurance policy itself identifies Plaintiff as a mortgagee. (Doc. 16, Ex. B at 1.)

12

Additionally, the policy's mortgage clause requires payment to the mortgagee. (Id. at 18.) Defendant Lexington offers several reasons why it might be plausible for Mr. Cramer to think that Darby Bank lacked any interest in the equipment. However, Mr. Cramer's single undocumented phone conversation with an unknown Darby Bank employee falls short of establishing that Defendant Lexington neither knew nor should have known that Darby Bank was due to receive proceeds under the terms of the policy. Because Defendant Lexington is unable to point to evidence in the record that would permit a reasonable jury to conclude that Plaintiff should be equitably estopped from seeking payment under the terms of the insurance policy, this defense does not bar Plaintiff's claim for breach of contract.[2]

C.    Assignment of the Insurance Policy

Defendant Lexington contends that Plaintiff is prohibited from seeking enforcement of the insurance policy because an assignment of rights from Darby Bank to Plaintiff violates the policy's requirement that Defendant Lexington consent to any assignment in writing. However,

---

[2] Because the Court concludes that Defendant Lexington has not met the elements of equitable estoppel, the Court declines to address Plaintiff's arguments concerning Defendant Lexington's ability to raise this defense in light of FIRREA and Defendant Lexington's failure to pay the policy proceeds under a reservation of rights.

this argument is foreclosed by FIRREA, which permits the FDIC to "transfer any asset or liability of the institution in default . . . without any approval, assignment, or consent with respect to such transfer." 12 U.S.C. § 1821(d)(2)(G)(i)(II). Therefore, the lack of a valid assignment does not preclude Plaintiff's claim for breach of contract.[3]

III. BAD FAITH

In response to Plaintiff's claim for bad faith adjustment, Defendant Lexington argues that Plaintiff failed to both make a proper demand under O.C.G.A. § 33-4-6 (Doc. 45, Attach. 1 at 18-21) and show bad faith (Doc. 59 at 15-20).[4] Parties asserting claims for bad faith pursuant to O.C.G.A. § 33-4-6 must establish "(1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith." Lawyers Title Ins. Corp. v.

---

[3] The Court notes that an insurance policy is considered an asset of the bank under 12 U.S.C. § 1821. See generally Nat'l Union Fire Ins. Co. v. City Sav., F.S.B., 28 F.3d 376, 384 (3d Cir. 1994).

[4] Defendant Lexington also argues that the bad faith claim was not properly assigned to Plaintiff. (Doc. 45, Attach. 1 at 22.) Because the Court has already determined that a valid assignment is not required in this case, see supra Analysis.II.C, it need not address this argument with respect to Plaintiff's claim for bad faith.

<u>Griffin</u>, 302 Ga. App. 726, 730, 691 S.E.2d 633, 636-37
(2010) (<u>quoting</u> <u>BayRock Mortg. Corp. v. Chi. Title Ins.</u>
<u>Co.</u>, 286 Ga. App. 18, 19, 648 S.E.2d 433, 435 (2007).
However, bad faith penalties are not permitted where the
insurer has any reasonable ground to contest the claim or
there is a disputed question of fact. <u>S. Fire & Cas. Co. v.</u>
<u>Nw. Ga. Bank</u>, 209 Ga. App. 867, 868, 434 S.E.2d 729, 730
(1993) (<u>quoting</u> <u>Fortson v. Cotton States Mut. Ins. Co.</u>, 168
Ga. App. 155, 158, 308 S.E.2d 382, 385 (1983)). While the
determination of bad faith is ordinarily left to the jury,
the court should disallow bad faith claims " 'when there is
no evidence of unfounded reason[s] for the nonpayment, or
if the issue of liability is close.' " <u>Homick v. Am. Cas.</u>
<u>Co.</u>, 209 Ga. App. 156, 157, 433 S.E.2d 318, 318 (1993)
(<u>quoting</u> <u>Int'l Indem. Co. v. Collins</u>, 258 Ga. 236, 238, 367
S.E.2d 786, 788 (1988)).

Assuming Plaintiff made the proper demand, it is
difficult for the Court to see how Defendant Lexington
should be subject to bad faith penalties in this case.
Plaintiff came to Defendant Lexington seeking payment on an
insurance policy under which Defendant Lexington had
already paid out over $1,000,000. This request came nearly
two-and-a-half years after Defendant Lexington made full
payment to Defendant Coastal for the very same loss.

15

Furthermore, the party seeking payment was not the named mortgagee under the policy, but had purchased the assets of that failed banking institution from the FDIC. Given the set of circumstances faced by Defendant Lexington, the Court finds unsurprising Defendant Lexington's trepidation to conclude Plaintiff was entitled to payment under the policy.[5] In any event, the Court's review of the record has failed to uncover " 'evidence of unfounded reason[s] for the nonpayment.' " Id. Accordingly, Defendant Lexington is entitled to summary judgment on this claim.

## IV.  CONVERSION

Defendant Lexington argues that it is entitled to summary judgment on Plaintiff's claim for conversion because Plaintiff is unable to prove the equipment had any value following the fire. (Doc. 45, Attach. 1 at 22-23.) In response, Plaintiff contends that they should be able to pursue this claim because Lexington has failed and refused to provide any information concerning the salvage value of the equipment. In Georgia, a party seeking to establish a prima facie case of conversion must establish (1) title to

---

[5] While the Court has ultimately decided the breach of contract issue in Plaintiff's favor, the Court finds no evidence of bad faith in Defendant Lexington's decision not to repay policy proceeds to an assignee of a third-party beneficiary to the policy nearly three years after the loss occurred.

the property; (2) possession by the defendant; (3) a demand for possession; (4) a refusal to surrender the property; and (5) value of the property. City of Coll. Park v. Sheraton Savannah Corp., 235 Ga. App. 561, 564, 509 S.E.2d 371, 374 (1998) (quoting Buice v. Campbell, 99 Ga. App. 334, 335, 108 S.E.2d 339, 341 (1959)).

In this case, Plaintiff has not pointed to any evidence in the record establishing the value of the property. By all accounts the equipment was completely destroyed following the fire. Plaintiff engaged in extensive discovery, but still failed to uncover evidence or testimony that the equipment retained any value. While Plaintiff now alleges that Defendant Lexington "failed and refused to provide that information" during discovery, the proper remedy for withholding discovery would have been for Plaintiff to file a timely motion to compel. (Doc. 57 at 19.) That time has come and gone, leaving Plaintiff with no evidence showing that the equipment allegedly converted by Defendant Lexington had any value at all.[6] Accordingly, Defendant Lexington is entitled to summary judgment with respect to this claim.

---

[6] The lack of any discoverable evidence establishing a value for the destroyed equipment may very well mean that it lacked any value at all.

17

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment (Doc. 42) and Defendant Lexington Insurance Company's Motion for Summary Judgment (Doc. 45) are both **GRANTED IN PART** and **DENIED IN PART**: Plaintiff is entitled to summary judgment only with respect to its claim for breach of contract. Defendant is entitled to summary judgment on Plaintiff's claims for bad faith adjustment and conversion, which are both hereby **DISMISSED**.

SO ORDERED this 25ᵗʰ day of September 2015.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA