IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

AMERIS BANK, as assignee of )
the Federal Deposit Insurance )
Corporation, receiver of )
Darby Bank and Trust Co., )
 )
    Plaintiff, )
 )
v. ) CASE NO. CV413-241
 )
LEXINGTON INSURANCE COMPANY, )
 )
    Defendant and Third- )
    Party Plaintiff, )
 )
v. )
 )
COASTAL BIOFUELS, INC., )
 )
    Third-Party Defendant. )
 )

## O R D E R

Before the Court are Third-Party Plaintiff Lexington Insurance Company's (Doc. 92) and Third-Party Defendant Coastal Biofuels, Inc.'s (Doc. 46) Motions for Summary Judgment. For the following reasons, Third-Party Defendant Coastal Biofuels, Inc.'s motion is **GRANTED** and Third-Party Plaintiff Lexington Insurance Company's motion is **DENIED**. As a result, Third-Party Plaintiff Lexington Insurance Company's complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

**BACKGROUND**

The material facts of this case are not in dispute. This case stems from Third-Party Plaintiff Lexington Insurance Company's ("Lexington") failure to properly pay the proceeds of an insurance policy issued by Plaintiff Lexington to Third-Party Defendant Coastal Biofuels ("Coastal").[1] In October 2009, Defendant Coastal entered into a leasing agreement[2] with Darby Bank for pieces of heavy equipment. (Doc. 92, Attach. 1 at 2.) As part of the agreement, Darby Bank required Defendant Coastal to insure the equipment and identify Darby Bank as a mortgagee. (Id.) To meet this requirement, Defendant Coastal purchased from Plaintiff Lexington policy number 43924991, which listed Defendant Coastal as the named insured and Darby Bank as a mortgagee. (Id.; Doc. 16, Ex. B at 1-2.) Specifically, Item 6 of the policy's declarations page recognized the policy's mortgage clause and stated that "[l]oss, if any shall be payable to: Darby Bank, Attn: K Rossiter." (Doc. 16, Ex. B at 1.) The policy's mortgage clause provided that "[l]oss or damage, if any, under this policy shall be payable to

---

[1] From this point forward, the Court will refer to Lexington as Plaintiff and Coastal as Defendant.

[2] While styled as a lease, the contract was more accurately a purchase agreement whereby Defendant Coastal would own the equipment after successful completion of the lease term. (Doc. 42 at 2 n.1) To this end, Darby Bank perfected a security interest in the equipment. (Id. at 2.)

2

the mortgagee(s), as scheduled on this policy, as their interest(s) may appear." (Id. at 47.)

On October 13, 2009, a fire destroyed the equipment. (Doc. 92, Attach. 1 at 2.) In response, Defendant Coastal filed a claim on the policy. (Id.) Plaintiff Lexington engaged an independent contractor—Mr. Curtis Cramer—to adjust Defendant Coastal's claim. (Id.) Mr. Cramer spoke via phone with an unknown and unnamed individual at Darby Bank who informed him that "Darby did not possess any liens and all payments were current." (Id. at 2-3.) Based on this information, Plaintiff Lexington paid to Defendant Coastal policy proceeds in the amount of $1,145,245.58, of which $568,000.00 was for the value of the equipment. (Id.) Plaintiff Lexington took possession of the equipment, ultimately disposing of it due to the lack of any salvage value. (Id.)

At the time of the fire, Defendant Coastal owed Darby Bank $507,269.00 under the terms of the lease agreement. (Doc. 42 at 3.) While Defendant Coastal purchased replacement equipment with the policy proceeds (Doc. 92, Attach. 1 at 3), it failed to notify Darby Bank that the equipment had been destroyed (Doc. 42 at 3). For a period of time, Defendant Coastal continued to make the required payments under the terms of the lease agreement. (Doc. 92,

Attach. 1 at 4.) However, Defendant Coastal ultimately defaulted on the agreement with $318,448.00 in remaining lease payments. (Id.)

In November 2010, the Georgia Department of Banking and Finance closed Darby Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. (Id. at 3.) Ameris Bank subsequently entered into a Purchase and Assumption Agreement with the FDIC and acquired Darby Bank's assets. (Id.) On September 30, 2013, Ameris Bank filed suit against Plaintiff Lexington in the State Court of Chatham County. (Doc. 1, Ex. 1.) Defendant Lexington invoked this Court's diversity jurisdiction and removed this case pursuant to 18 U.S.C. § 1332. (Id.) Plaintiff Lexington filed a third-party complaint against Defendant Coastal for indemnification, alleging Defendant Coastal wrongfully converted the insurance proceeds. (Doc. 17.) On September 25, 2015, this Court granted in part Ameris Bank's Motion for Summary Judgment and concluded that Plaintiff Lexington was liable for its breach of the insurance contract because they failed to pay the insured value of the equipment to Darby Bank as the mortgagee. (Doc. 82 at 1.) In light of that ruling, both Plaintiff Lexington and Defendant Coastal seek summary judgment with

4

respect to Plaintiff Lexington's crossclaim for indemnification.

In its Motion for Summary Judgment, Plaintiff Lexington argues that it is entitled to equitable indemnity from Defendant Coastal based on the wrongful conversion of the insurance proceeds. (Doc. 92, Attach. 1 at 5-8.) In addition, Plaintiff Lexington reasons that it is entitled to relief under a theory of unjust enrichment. (Id.) Finally, Plaintiff Lexington maintains that the voluntary payment doctrine does not bar its recovery in this case. (Id. at 8-12.)

For its part, Defendant Coastal maintains that Plaintiff Lexington's claim for equitable indemnity lacks merit because Plaintiff Lexington has failed to identify any underlying tortious action by Defendant Coastal. (Doc. 95 at 13-15.) Also, Defendant Coastal argues that unjust enrichment is inapplicable in this case because the relationship between the parties was governed by a valid contract of insurance. (Doc. 46 at 22-23.) Finally, Defendant Coastal contends that Georgia's voluntary payment doctrine precludes Plaintiff Lexington from recovering the disputed insurance proceeds. (Id. at 15-21.)

**ANALYSIS**

I.  SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim of defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. EQUITABLE INDEMNITY

In Georgia,[3] a party is entitled to equitable indemnity where it has been required to pay "damages because of negligence imputed to [it] as the result of a tort committed by another." Dist. Owners Ass'n, Inc. v. AMEC Envtl. & Infrastructure, Inc., 322 Ga. App. 713, 716, 747 S.E.2d 10, 13 (2013) (quoting City of Atlanta v. Benator, 310 Ga. App. 597, 608-09, 714 S.E.2d 109, 118 (2011)). This theory permits the party held liable to seek compensation from "the person whose wrong has thus been imputed to him." Id. Important to this case, however, is that equitable indemnity "contemplates imputed liability arising from the torts of another." Emergency Prof'ls of Atlanta, P.C. v. Watson, 288 Ga. App. 473, 475, 654 S.E.2d 434, 436 (2007) (emphasis added) (citing Auto-Owners Ins. Co. v. Anderson, 252 Ga. App. 361, 363, 556 S.E.2d 465 (2001)).

In its Motion for Summary Judgement, Plaintiff Lexington makes only passing reference to the notion that Defendant Coastal wrongfully converted the insurance proceeds. (Doc. 92, Attach. 1 at 7-8.) Defendant Coastal even highlighted this omission in its response. (Doc. 95 at 14.) In its reply, Plaintiff Lexington still failed to

---

[3] The parties do not dispute that Georgia law is applicable to this case. (Doc. 46 at 14.)

8

offer any actual legal argument that Defendant Coastal's actions constituted conversion, instead offering only the simple *ipse dixit* that Defendant Coastal "wrongfully converted [the insurance] proceeds for itself and caused Lexington to pay for one loss twice." (Doc. 97 at 2.)

To establish a claim for conversion, a plaintiff must show that (1) he was entitled to possession of the converted property; (2) the defendant actually possessed the converted property; (3) he demanded return of the property; and (4) the defendant refused to return the property. Metzger v. Americredit Fin. Servs., Inc., 273 Ga. App. 453, 454, 615 S.E.2d 120, 122 (2005) (quoting Johnson v. First Union Nat'l Bank, 255 Ga. App. 819, 823, 567 S.E.2d 44, 48 (2002)). In this case, Plaintiff Lexington has pointed to no evidence in the record that it was entitled to possession of the converted property. The funds at issue in this case were proceeds from an insurance policy that were distributed in satisfaction of a valid, properly-payable claim on the policy. While the Court is not deciding the issue, what is clear is that Plaintiff Lexington has failed to identify any evidence in the record that would permit a reasonable jury to find that Defendant Coastal committed the tort of conversion.

In addition, equitable indemnity is applicable where one party has been required to pay "damages because of <u>negligence</u> imputed to him as the result of a tort committed by another." <u>Dist. Owners Ass'n</u>, 322 Ga. App. at 747 S.E.2d at 13 (quoting <u>Benator</u>, 310 Ga. App. at 608-09, 714 S.E.2d at 118). In this case, Plaintiff Lexington's obligation to pay damages to Ameris Bank is based on breach of contract, not negligence. (Doc. 82 (granting Ameris Bank summary judgment only with respect to its breach of contract claim).) Plaintiff Lexington may have negligently adjusted Defendant Coastal's claim and, as a result, failed to pay the proper party. However, Plaintiff Lexington's breach of the insurance agreement, not any negligent act, formed the basis for the award of damages to Ameris Bank in this case. Moreover, the Court fails to understand how this negligence can be imputed to Defendant Coastal, who clearly informed Plaintiff Lexington that Darby Bank held a lien on the insured property. (Doc. 46 at 8.)

Even assuming Plaintiff Lexington properly advanced these arguments, it has simply failed to identify any case that would suggest it is entitled to equitable indemnity from Defendant Coastal. Indeed, Plaintiff Lexington's briefs are completely devoid of any legal support for its arguments. Unsurprisingly, this Court's review failed to

locate any. For all these reasons, Defendant Coastal is entitled to summary judgment with respect to Plaintiff Lexington's claim for equitable indemnity.

III. UNJUST ENRICHMENT

Unjust enrichment is an equitable remedy that applies where one party has provided a benefit to another, in the absence of any contract, and equity demands that the receiving party return or provide compensation for that benefit. Wachovia Ins. Servs., Inc. v. Fallon, 299 Ga. App. 440, 449, 682 S.E.2d 657, 665 (2009) (quoting Harris Ins. Agency v. Tarene Farms, 293 Ga. App. 430, 431, 667 S.E.2d 200, 201 (2008)). Under these circumstances, the theory of unjust enrichment works to imply a contract where none actually existed. See Ga. Dep't of Cmty. Health v. Data Inquiry, LLC, 313 Ga. App. 683, 687, 722 S.E.2d 403, 407 (2012). "Where there is an express contract, there can be no recovery based upon an unjust enrichment theory." Marvin Hewatt Enters., Inc. v. Butler Capital Corp., 328 Ga. App. 317, 322-23, 761 S.E.2d 857, 863 (2014) (quoting Han v. Han, 295 Ga. App. 1, 4, 670 S.E.2d 842, 845 (2008)).

In this case, the rights and obligations of both parties were clearly defined and governed by the contract of insurance. Given the presence of this express contract, Plaintiff Lexington's unjust enrichment claims must fail.

Once again, Plaintiff Lexington offers little argument and no legal support for its position other than the general statements that Defendant Coastal wrongfully retained the insurance proceeds and "[e]quity demands that Lexington recover from Coastal Biofuels the amount of its unjust enrichment." (Doc. 97 at 4-5.) Without any legal support, these cries of wrongdoing do not afford Plaintiff Lexington any remedy. Accordingly, Defendant Coastal is entitled to summary judgment with respect to Plaintiff Lexington's unjust enrichment claim.

IV. VOLUNTARY PAYMENT DOCTRINE

Even assuming Defendant Coastal could be held accountable under either of Plaintiff Lexington's theories, the voluntary payment doctrine would still prohibit Plaintiff Lexington from recovering in this case. In Georgia,

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property.

O.C.G.A. § 13-1-13. The party seeking recovery bears the burden of establishing the inapplicability of the voluntary payment doctrine. S. Mut. Church Ins. Co. v. ARS Mech.,

12

LLC, 306 Ga. App. 748, 751, 703 S.E.2d 363, 366 (2010) (quoting Energy & Process Corp. v. Jim Dally & Assoc., Inc., 291 Ga. App. 772, 775, 662 S.E.2d 835, 839 (2008)).

In this case, Plaintiff Lexington has failed to identify evidence in the record that it made the insurance payment to Defendant Coastal either without knowledge of all relevant facts, or due to misplaced confidence, deception, or fraud. It is undisputed that Defendant Coastal informed Plaintiff Lexington that Darby Bank held a lien on the insured property. (Doc. 95 at 8-9.) Plaintiff Lexington clings to the idea that it tendered the insurance proceeds to Defendant Coastal after misplacing its confidence in Darby Bank's representation that it had no interest in the insured property. However, this information was provided by Darby Bank, not the party from whom Plaintiff seeks to recover. Therefore, Plaintiff Lexington still fails to establish any misplaced confidence used by the party in receipt of the voluntary payment. See O.C.G.A. § 13-1-13. Accordingly, Defendant Coastal is entitled to summary judgment because the voluntary payment doctrine would operate to preclude any recovery by Plaintiff Lexington.

## CONCLUSION

It probably comes as cold comfort to Plaintiff Lexington, but at the end of the day the Court is left with the distinct feeling that Defendant Coastal got away with one in this case. On the other hand, Plaintiff Lexington also seems to be the primary architect of its own misfortune. Plaintiff Lexington's independent adjuster failed to obtain the slightest amount of documentation that Darby Bank disavowed any interest in the insured property, instead simply relying on a purported phone conversation with an unnamed Darby Bank employee. That appears to be a costly lesson.

If this were a simple playground argument over found lunch money, the Court would not hesitate to force Defendant Coastal to return the money to Plaintiff Lexington because it is the right thing to do. However, this dispute is being resolved in a court of law and not on the playground, and this Court must follow the law instead of assuming the role of Solomon and crafting an outcome based on equity alone. Unfortunately for Plaintiff Lexington, it has failed to articulate any legal or factual basis for obtaining relief in this case, necessitating dismissal of its claims.

For the foregoing reasons, Defendant Coastal's (Doc. 46) Motion for Summary Judgment motion is **GRANTED** and Plaintiff Lexington's Motion for Summary Judgment (Doc. 92) is **DENIED**. As a result Plaintiff Lexington's Third-Party Complaint is **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 21ST day of September 2017.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA